(No. 12523.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
GEORGE I. DANKS, Exr. *et al.* Appellants.

*Opinion filed October 27, 1919.*

1. INHERITANCE TAX—*Inheritance Tax act does not apply unless conveyance is testamentary or in contemplation of death.* The Inheritance Tax act does not prevent a person from disposing of his property in any legitimate way he sees fit nor prevent a parent from giving the whole or any part of his estate to his children so long as the gift is not intended as a testamentary disposition or made in contemplation of death, but the act merely imposes a tax upon the right of succession through the laws of descent and devise.

2. SAME—*purpose of taxing transfers made in contemplation of death.* The purpose of the provisions of the Inheritance Tax act imposing a tax upon gifts or transfers to take effect after the death of the donor or made in contemplation of his death is to prevent an evasion of the act by a distribution of property just before or in anticipation of the owner's death or by a disposition of a testamentary nature.

3. SAME—*meaning of term "in contemplation of death."* The term "in contemplation of death" does not mean that general expectation which all rational persons have that they must die some time, but refers more particularly to that apprehension of death which arises from some existing infirmity of such a character as· prompts one to make a disposition of his property, and a gift is made in contemplation of death when it is made in expectation of that event or with that event in view.

4. SAME—*what circumstances may be considered in determining whether gift is made in contemplation of death.* Whether a voluntary disposition of property is made in contemplation of death rests upon the facts and circumstances in each case, and in determining this question the donor's age, physical condition, any action contemplated .to be taken by him with respect to his health, and the length of time he survives the making of the transfer, are all proper matters to be considered.

5. SAME—*when gift is made in contemplation of death.* Where it is apparent from all the facts that the donor's condition was such that he might reasonably have expected death at any time, and where the disposition of his property is such as he had contemplated making or such as he might reasonably be supposed to have desired to be made at his death, and no other cause is apparent for making the transfer at the time it was made, a conveyance to the donor's daughter will be deemed to have been made in contemplation of death, even though the transfer is absolute in form and effective in the grantor's lifetime.

APPEAL from the County Court of Effingham county; the Hon. BARNEY OVERBECK, Judge, presiding.

GEORGE I. DANKS, and PAUL TAYLOR, for appellants.

EDWARD J. BRUNDAGE, Attorney General, FLOYD E. BRITTON, and HARRY S. PARKER, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal from a judgment of the county court of Effingham county fixing a tax of $3213 under the Inheritance Tax law against Maude B. Danks on account of property transferred to her by her father, William Gillmore. No question is raised as to the regularity of the

proceedings by which the tax was assessed, so the only question in controversy is the liability for such tax of certain real estate conveyed to Maude B. Danks by deeds made by William Gillmore, deceased, two years prior to his death. The county court held the transfers were taxable as gifts made "in contemplation of death," and accordingly entered an order assessing the tax. From this decision George I. Danks, as executor, and Maude B. Danks, have prosecuted their appeal to this court.

The facts were stipulated in the trial court, and so far as they are material to be considered here may be stated as follows: William Gillmore, a resident of Edgewood, Effingham county, this State, departed this life testate on May 9, 1917, leaving him surviving Maude B. Danks and James L. Gillmore, his children and only heirs-at-law. He left an original will, dated November 13, 1907, to which were attached two codicils,—one dated December 3, 1912, shortly after the death of his wife, and the other November 13, 1915, a week after the execution of the last deed here in question. The will and codicils were duly admitted to probate and letters testamentary issued. The appraised value of his estate, other than the land on which the tax in controversy was assessed, was $89,421.30. Maude B. Danks, as residuary legatee under such will, received notes and personal property aggregating $67,567.16. She also received from her father, by assignment made on November 6, 1915, notes and mortgages aggregating $44,000, on which he reserved the interest or income during his life. It is admitted this property was subject to an inheritance tax. In addition to the above property, deceased in his lifetime conveyed to his daughter, Maude, real estate valued at $69,083. March 26, 1915, he executed three deeds conveying to her a tract of 1355.41 acres, valued at $31,834, and November 6, 1915, he executed four deeds conveying to her 1024.23 acres, valued at $37,249. All of this land is situated in Effingham county, this State. The deeds were

intended as absolute conveyances of the property described therein, and were duly executed, acknowledged and delivered at the time made. The consideration stated in each deed is "love and affection and one dollar." At the time the deeds were made the land was under lease to George I. Danks, son-in-law of the deceased, at an annual rental of one dollar. The lease was made January 1, 1914, and runs for the period of the natural life of the lessor, William Gillmore. At the time the deeds were made Gillmore was affected with heart trouble and arterio sclerosis of some two or three years' standing and was continually under treatment and care of a physician. He had consulted a specialist and was fully advised as to the nature of his trouble. He was taking medicine daily for his heart. During the last two or three years of his life he was constantly attended by a maid. He was not, however, confined to his bed but was up and around the house and nearly every day went to his store, a short distance from his home. At the time the deeds were made his condition of health was fairly good, considering his age and the nature of the disease with which he was afflicted, and it is not claimed his condition was then any different from what it had been for some months before. No serious attacks of heart trouble are shown to have occurred until a few days before his death. Some years before he died he gave to his son, James L. Gillmore, a tract of 160 acres of land in Clay county, in this State, and $1000 in cash. This deed is dated May 1, 1905. At the same time he took from his son a receipt, in which it was recited that the father had previously given the son money and other property, and that in consideration of such gifts and conveyances made it was agreed that the son had received his full share in the estate, and that in the event his father preceded him in death he would not be entitled to any share in the estate, nor would he have any claim or demands, of any kind or nature whatever, against it. The value of the property previously given

289 — 35

to the son is not shown. On September 6, 1912, he also made a gift of a tract of 62 acres of land in Effingham county to a nephew, Erastus S. Gillmore, by executing a deed to the same, which was placed in a sealed envelope and left with a bank at Edgewood, to be delivered to the grantee at the grantor's death. No gifts or transfers of property of any kind are shown to have been made to Maude B. Danks prior to the conveyances in question, unless the lease of this land to her husband on January 1, 1914, can be so considered. About ten years before his death the deceased induced his daughter and her husband, George I. Danks, to give up their home in the west and come and reside with him. At the time this was done George I. Danks took upon himself the management of the business of deceased, and in return received a grocery store located at Edgewood and $1000 worth of stock in the First National Bank of Effingham, and later a lease to the land subsequently conveyed to the daughter, and a gift of the horses, cattle and farm tools which the deceased then owned. It is also stipulated that deceased on several occasions told the officer who took the acknowledgment to the deeds that he was going to give his land to his daughter, and that on the day the last deed was executed he told the officer he was giving all his land to Maude. By his original will, executed November 13, 1907, he gave the bulk of the property he then owned, including the property against which the tax in question was assessed, to his daughter, and by the codicil executed December 3, 1912, shortly after the death of his wife, he gave to his daughter the property he had previously devised to his wife, and by the second codicil, made November 13, 1915, he directed that his daughter pay to her brother, James L. Gillmore, $30 a month so long as he lived, with the further provision that should the son attempt in any way to contest the will or any disposition made by him of his property, the son should forfeit his right to such monthly payment.

The sole question presented by this record is whether or not, under the facts as stipulated, with all legitimate inferences to be drawn therefrom, the conveyances in question are to be deemed to have been made "in contemplation of death," as those words are used in the statute. The Inheritance Tax law was not intended to prevent a person from disposing of his property in any legitimate way he sees fit, (*People* v. *Burkhalter,* 247 Ill. 600,) nor to prevent a parent, in his lifetime, from giving to his children the whole or any part of his estate, so long as the gift was not intended as a testamentary disposition of his property or made in contemplation of the donor's death. (*People* v. *Kelley,* 218 Ill. 509.) The law merely imposes a tax upon the right of succession to the ownership of property through the operation of the laws relating to descent and devise. (*Kochersperger* v. *Drake,* 167 Ill. 122; *In re Benton,* 234 id. 366.) The purpose of the provisions imposing a tax upon gifts and transfers intended to take effect in possession or enjoyment after the death of the donor or made in contemplation of his death was to prevent an evasion of such laws by a distribution of property just before or in anticipation of the owner's death. Its manifested purpose was to include all gifts or transfers made prior to the donor's death which were similar in their nature and effect to a testamentary disposition of property or accomplished the same object, under circumstances which imparted to it the characteristics of a devolution of property made in anticipation of the donor's death. *Rosenthal* v. *People,* 211 Ill. 306.

A gift is made "in contemplation of death" when it is made in expectation of that event or with that event in view. (*Rosenthal* v. *People, supra.*) The term does not mean that general expectation which all rational persons have that they must die some time, but refers more particularly to that apprehension of death which arises from some existing infirmity of such a character as would prompt an ordinarily prudent person to make a disposition of his prop-

erty and bestow it upon those whom he regarded as most entitled to be the recipients of his bounty. (*People* v. *Carpenter,* 264 Ill. 400.) What prompts the making of such a conveyance rests upon the facts and circumstances surrounding each particular case. No general rule can be formulated which will fit all cases but each case must be examined and determined on its own facts and circumstances, in the light of the experience which the courts have gained in dealing with such matters. For this purpose the donor's age, physical condition, and any action contemplated to be taken by him with respect to his health, as well as the length of time he survives the making of the transfers, are all proper matters to be considered in determining whether or not the act was done in contemplation of death. If, upon a consideration of all the surrounding facts and circumstances, it is apparent the donor's condition was such that he might reasonably have expected death at any time, and the disposition made of his property is such as he had contemplated making in that event or such as he might reasonably be supposed to have desired to be made at his death, and no other moving cause is apparent for making the transfer at the time it was made, the gift will be deemed to have been made in contemplation of death, even though the transfer is absolute in form and such as would invest the donee with the absolute right to the property during the lifetime of the donor. (*Rosenthal* v. *People, supra; Merrifield* v. *People,* 212 Ill. 400; *People* v. *Porter,* 287 id. 401.) In the instant case the donor was past eighty-eight years of age, in poor health, under a specialist's care and constantly in charge of an attendant or maid. He was affected with an incurable disease, was fully advised of that fact, and was no longer taking any active interest in his business affairs. His whole environment was that of a man who realized that he had not long to live, and his thoughts seemed centered upon making provision for those who were to enjoy his property after his death.

This is shown by the transfer of his store and farm property to his son-in-law; the execution of a lease of the land in question, at a nominal rental, for the period of his natural life; the gift of certain of his property to his son; the taking from the son of an acknowledgment that he had received his share of his father's estate; the execution of the deed for certain lands to his nephew, to be delivered at his death; the execution of the deeds in question; the assignment of the notes and securities to his daughter, in which he reserved the interest or income during his life; and the almost simultaneous execution of the codicil to his will, by which he endeavored to make the prior gifts to his daughter doubly secure to her. All of these are the acts of a man who realizes that his death is apt to occur in the near future and is making preparation for that event. In this respect the case at bar is clearly distinguishable from *People* v. *Kelley, supra,* the case mainly relied upon by appellants. In that case the trust deed was executed because the donor felt his sons were not making as much money in their business as their stations in life required, and the object of the trust deed was to place them in the present enjoyment of the income of the property and supply them with ample means for their stations in life. No such object prompted the making of the transfers in question here. By the deeds in question no estate in present enjoyment was created in the daughter and she was not presently enriched by the conveyances. The land conveyed was still subject to a lease to her husband at a nominal rental and she would not come into the enjoyment of it until after her father's death. The conveyances by deed merely confirmed in her what her father had already provided she should take under the will.

The judgment of the county court of Effingham county was right, and it is affirmed.          *Judgment affirmed.*