The proper consideration of the question before us begins with an inquiry into the reason and spirit of the statute under which the tax in question is asserted.
By virtue of express law, and not otherwise, one person is permitted to succeed to the property of another upon the latter's death. "All rules of succession to estates are creatures of the civil polity and juris positive merely," says Blackstone, and "there is certainly therefore no injustice done to individuals whatever be the path of descent marked out by the municipal law." 2 Blackstone, Comm's, 211.
Because the laws of the state confer upon certain persons the highly valuable right of succession to the property of certain other deceased persons, it is deemed appropriate and just that upon such succession a tax should be laid for the public benefit. The tax is made a charge upon the property so transferred and against the transferee thereof upon the grounds that the property comes to the transferee without any consideration on his part, but purely through the favor of the law. In one sense by such taxes the state takes nothing from the heir, but merely limits what the heir himself shall take. The power of the state to limit, or even deny, the right of inheritance cannot be doubted.
In giving effect to these principles the Legislature in its first enactment (Laws of Utah 1901, c. 62) provided only for the taxation of property passing by will or inheritance, and "by deed, grant, sale or gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor." The obvious idea was to tax, not only transfers by will and inheritance, but transfers intended to take effect after the donor's death, because the latter were in substance and effect the same as transfers *Page 74 
by inheritance, although made in a different form. The statute in this respect stood unchanged until 1915, when the Legislature amended the act extending the tax to transfers "made in contemplation of the death of the grantor, vendor or donor." Laws of Utah 1915, c. 98.
In construing the meaning of the words "in contemplation of the death" as employed in the amendment, it is well to bear in mind the subject-matter before the Legislature and its purpose and intent with reference thereto. It is obvious that the Legislature was concerned in correcting an evil and amending the statute in order to prevent evasions and to reach and uniformly subject to the tax all transfers of property in whatever form which were in substance and effect transfers by inheritance, and therefore within the spirit and reason of the policy of taxing them. No other possible intention is imputable to the Legislature. And the words employed, if given their ordinary and reasonable signification, give apt expression to that intent, and result in uniformity and impartiality. It is only when the phrase "in contemplation of death" is narrowed and restricted by judicial interpretation that the purpose of the statute is defeated.
The interpretation that a transfer is made in contemplation of death only when the grantor, by reason of some physical ailment or impending danger expects and believes that death is near at hand, is supported as an exclusive definition by only a few cases. The great weight of authority does not support that extreme view. It finds no support in Ross on Inheritance Taxation, § 117, nor in People v. Danks, 289 Ill. 542,124 N.E. 625, 7 A.L.R. 709; nor even in Spreckels v. State,30 Cal.App. 363, 158 P. 549 (the doctrine of which has been substantially repudiated by later decisions of the Supreme Court of that state, as will hereafter appear). In Shwab v. Doyle, 269 F. 321, the Circuit Court of Appeals, after an exhaustive review of the cases up to that time, expounds the more liberal doctrine that "a transfer may be said to be made in contemplation of *Page 75 
death if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer."
And what was said in our own case (In re Romney's Estate,60 Utah 173, 207 P. 139) upon the subject most certainly cannot be regarded as binding this court to any view of the question. In that case Mr. Justice Gideon disposed of the subject by casually observing that the grantor at the time was in good health and actively engaged in business. When it is considered that the statute in force when those transfers were made did not tax transfers made in contemplation of death, and that the transferees were not parties to the action, and the trial court had found the transfers not taxable on this ground, and that the point was not seriously pressed by the appellant, and the case was tried and decided upon a wholly different theory, it is easy to understand why the matter referred to was thus only incidentally mentioned and was summarily dismissed from consideration without argument, citation of authority, or statement of legal principle. Such general expressions made under such circumstances are not expected to be, and cannot be, treated as precedents.
An examination of the numerous cases upon the subject collected in annotations found in 7 A.L.R. 1028, 21 A.L.R. 1335, and 41 A.L.R. 989, will confirm the conclusion of the annotator that:
"When there is a gift or transfer in contemplation of death within the meaning of the succession or inheritance taxing statutes is a question that cannot be answered in any general way, for the answer to the question depends upon the facts in the individual case."
Of course, proof that the grantor, when making the transfer, had reason to, and did, anticipate his death in the near future from a known physical cause, is very ample and satisfactory grounds for concluding that the transfer was made in contemplation of death, but it by no means follows that such proof is essential to support the conclusion. It is *Page 76 
not the fact that persons contemplate death only when it seems near at hand by reason of infirmity or disease or surrounding danger. All thoughtful persons contemplate death frequently and seriously without regard to its imminency, and may in such contemplation, and solely by reason thereof, perform deliberate acts. The ordinary acts of persons are performed without thought or contemplation of death, but upon the assumption that they will continue to live. But there are some acts of such nature, character, and effect, and which are performed under such circumstances, that they signify in themselves that they were induced by a contemplation of death. One of such acts is the transfer by a person of advanced age of his property to his children as a plain substitute for or to prevent the property transferred from passing by the laws of inheritance. Such a transfer is made in anticipation of death, because the consequences of death is the very thing provided against. There is ample support in the authorities for this view. Ross, in Inheritance Taxation, § 117, says the meaning of the words "in contemplation of death" as used in the statute "must be inferred and ascertained from the context of the statute and the object and purpose of the law. Looking in that direction for their proper interpretation, it becomes obvious that they are intended to cover transfers of persons who are prompted to act by reason of the expectation of death and who thereby accomplish transmissions of property in the nature of testamentary dispositions." In People v. Danks, 289 Ill. 542,124 N.E. 625, 7 A.L.R. 709, the court said the purpose of the statute was "to include all gifts or transfers made prior to the donor's death which were similar in their nature and effect to a testamentary disposition of property or accomplished the same object, under circumstances which imparted to it the characteristics of a devolution of property made in anticipation of the donor's death." In State v. Pabst, 139 Wis. 561,121 N.W. 351, it is said that the statute manifests a purpose to tax all transfers "made prior to death which can be classed as similar in nature and effect, because *Page 77 
they accomplish a transfer of property under circumstances which impress on it the characteristics of a devolution made at the time of the donor's death."
These expressions are significant because they are wholly independent of any requirement that death be expected from any specific cause or at any particular time, and they support the broader generalization which has been expounded and applied to concrete situations by courts of high respectability in several cases.
In re Bottomley's Estate, 92 N.J. Equity, 202, 111 A. 605, it was held under a statute imposing a tax on transfers made in contemplation of death that a transfer by a grantor in good physical and mental health for his age, and with no reason to believe that he did not have a considerable number of years to live, but which as made under circumstances clearly indicating it to be in lieu of a testamentary disposition, it was a transfer made in contemplation of death within the meaning of the statute, and hence taxable. In this case the grantor had had a stroke of apoplexy 14 years before the transfer, but had, in a great measure, recovered therefrom. The value of the case as a precedent lies in the fact that the court ignores the feature of physical disability, and puts its decision on other grounds.
The court said:
"Considering not only the language, but the nature and design of the entire statute, and the history of the legislation upon this subject, I am convinced that a transfer made in lieu of making a testamentary disposition comes within the expressed intent of this legislative provision.
"The design of this so-called inheritance tax legislation was not to interfere with a man's own enjoyment of the property he acquired, during the time he could, and did, desire to own and enjoy it himself — prima facie, his lifetime — but to take a toll out of such property after the owner had finished with it, on its way to those to whom, under and by virtue of the laws and the governmental machinery of the state, it should then pass. The natural and logical time for the fastening of such a tax was therefore at the death of the owner — and the *Page 78 
statutes at first taxed the property passing by will or intestate succession. Gifts made to take effect at the death of the grantor or donor were, in effect, only another form of testamentary disposition, and they were also taxed. Then there arose those gifts or transfers made and taking effect in the donor's lifetime, but in fact being dispositions made by him because he had finished, either wholly or partially, with his desire for enjoyment of the subject-matter and desired to make a transfer in his lifetime which would take the place of a transfer by will and would not be subject to the tax — hence, the addition to the statute of the provision as to gifts in contemplation of death."
In Armstrong, Adm'r, v. State, 72 Ind. App. 303,120 N.E. 717, the court, in sustaining a finding that a transfer by a person of advanced age but in good health, both before and after the transfer, was made in contemplation of death and therefore taxable, said:
"It is a generally recognized principle or rule of law that inheritance tax statutes are not intended to take away the right of a person to make an absolute gift and transfer of his property, but they are intended to impose the tax upon transfers of property by will, by the laws of inheritance, and by such other gifts or transfers as are of like nature and may properly be classed therewith. Where such statutes have been enacted, it is the policy of the law that the owner of the property shall not evade the law, or defeat the purpose of its enactment by any form of conveyance or transfer, where the facts clearly and reasonably bring such transfer within the provisions of the enactment."
And: "The words `in contemplation of death,' as used in inheritance tax statutes, do not refer to that general expectation of death entertained by all persons, but they do refer to that expectation of death which arises from such bodilyor mental conditions, irrespective of the cause in any particularcase, which prompts persons to dispose of their property to those they deem entitled to their bounty." (Italics supplied.)
Notwithstanding the decision quoted and stressed in Mr. Justice STRAUP'S opinion by the intermediate court of California,Spreckels v. State, 30 Cal.App. 363, 158 P. 549, the Supreme Court of that state has put the matter at rest in three recent cases. In that state an act passed in *Page 79 
1905 provided for the taxation of transfers by will or the intestate laws, including transfers made in contemplation of death, etc. In 1911 the act was amended by a legislative definition of the term "contemplation of the death," which reads:
"The words `contemplation of death,' as used in this act, shall be taken to include that expectancy of death which actuates the mind of a person on the execution of his will, and in nowise shall said words be limited and restricted to that expectancy of death which actuates the mind of a person in making a gift causa mortis; and it is hereby declared to be the intent and purpose of this act to tax any and all transfers which are made in lieu of or to avoid the passing of the property transferred by testate or intestate laws."
In re Reynolds' Estate, 169 Cal. 600, 147 P. 268, the Supreme Court of the state through Henshaw, J., declared that the amendment defining the term "served the purpose of elucidating without changing the law, by giving fuller expression to the legislative intent and meaning," and applied the doctrine to a transfer which had been made before the amendment took effect.
In re Pauson's Estate, 186 Cal. 358, 199 P. 331, the legislative definition was approved and applied to a transfer very similar in many respects to the one involved in the case at bar.
And in Chambers v. Larronde, 196 Cal. 100, 235 P. 1024, 41 A.L.R. 980, the court said:
"The phrase `in contemplation of death' as defined in the act of 1911 is merely the equivalent in meaning with that under the act of 1905, which does not purport to define the phrase, for the phrase must necessarily be construed as the language of the act of 1911 imports."
The statement of Mr. Justice Henshaw in the Reynolds Case is adopted with the observation "we are of opinion that the definition in the 1911 act did not change the *Page 80 
meaning of the phrase." The first syllabus which reflects the decision is as follows:
"Gifts of property by parent to child in lieu of a transfer by will are taxable under a statute taxing transfers made in contemplation of death of the grantor, although the gifts are made many years before death, and another statute subsequently provides that the words `contemplation of death,' as used in it, shall be taken to include that expectancy of death which actuates the mind of a person in the execution of a will, and declaring the purpose to be to tax transfers which are made in lieu of, or to avoid, the passing of the property by testate or intestate laws, since the definition in the latter act does not change the meaning of the phrase."
These authorities support the view that the nature, character, and effect of a transfer or gift, and the circumstances under which it is made, may justify a finding that it was made in contemplation of death, even though the donor at the time of the transfer had no present fear or expectation of death from any known physical cause. This view is not only sound and sensible and within the object and purpose of the statute, but within the language of the statute. The statute provides for the taxation of transfers made "in contemplation of the death," without limitation as to when or why death is anticipated or expected.
Whether a transfer or gift by a person since deceased was made in contemplation of death involves an inquiry into his mental state at the time it was made. The nature of the subject precludes proof by positive or direct evidence. Of necessity, the fact must be deduced from circumstances, and the final conclusion cannot be made to depend upon the proof of any one particular circumstance. Advanced age, physical infirmity, and impending danger are all important factors. But they are not the sole tests, and the absence of proof of either or all of them does not preclude a finding of the fact, if proof by other satisfactory and convincing circumstances is made.
Therefore, when transfers are made by a person, although in good health at the time, under circumstances indicating *Page 81 
an intention to provide for the final disposition and distribution of his property, and which are similar in nature and effect to a testamentary disposition, and accomplish the same object, and which are obviously made in lieu of, and to avoid, the passing of the property transferred by the law of succession, it is open to the court or jury to find as a fact that the transfers were made in contemplation of death within the meaning of the statute.
If these legal conclusions are correct, the findings of the trial court that the transfers were in fact made in contemplation of death are amply supported by the evidence. It clearly appears that at the time of the transfers Ezra Thompson was 66 years and 8 months of age, and that he had a fortune of about $2,000,000, consisting mainly of real estate and mining stocks. He deeded his real estate to two corporations formed for the purpose, and gave the stock therein in equal shares to his four children. At the same time he divided mining stocks worth about $1,000,000 equally between his children. At the time two of his children were under the age of legal majority. He retained stocks worth about $225,000 to himself, but at his death 6 years later he left a gross estate of but $15,000. After making the transfers to his children, he retained the essential control and management of the real estate corporations, and withheld from his children, and kept to himself, all of the income and profits therefrom. He had extensive loan accounts with both real estate corporations. At one time the evidence shows that he owed one of the corporations over $250,000, and that the other owed him a greater sum. Dividends were formally declared by both real estate corporations and checks issued therefor and delivered to the children, but the entire amount of such dividends were immediately, after receipt thereof by the children, loaned by them respectively to their father. Large dividends were declared and paid on the transferred mining stocks, and checks therefor payable to the children were delivered to them, but each promptly loaned the amount received to his *Page 82 
father. Later, by a transfer of credits and manipulation of accounts not clearly explained, the matter was arranged so that the indebtedness of Ezra Thompson to his children was assumed by one of the corporations, and credits on its books were entered in favor of each child for an amount equal to his share of the total income of the transferred property which had accrued up to that time. The net effect of the transaction was that the naked legal title to the property stood in the names of the children, while the actual control and management and the income and profits were retained by the father. It was so manipulated that at his death the legal title to the property stood in the names of his children, with credits on the corporation books for their respective portions of the profits which had accumulated since the transfers to them.
It may here be observed that the retention of control and management by the donor, and the withholding of the income of the transferred property from the donees, is not an essential factor which determines the nature of the transfer. The transfer might well be determined as having been made in contemplation of death, even though the possession and enjoyment of the property had passed absolutely to the donees. The existence of the fact in this case however, is important, not as essential to the conclusion, but as a circumstance which, together with the other facts, support the ultimate conclusion.
There is no question here of the validity or good faith of the transfers in controversy. The legal right of Ezra Thompson to make the transfers, his good faith in making them, and their entire validity as transferring the property may all be admitted. The tax is not laid upon void or illegal transfers, but upon transfers by which the title to property does in fact and in law pass from one to another. Nothing evil in morals or in law is involved in making a transfer of property in contemplation of death. More often than otherwise such transfers are commendable. But they are *Page 83 
none the less subject to the tax. The tax is not laid as a penalty for wrongdoing but purely as a revenue measure. The taxation of these transfers does not depend upon a finding or even imply that Ezra Thompson in making the transfers, intended to evade the tax. Other sufficient reasons may and probably did induce him to so "put his house in order." To avoid the delay and save the expenses of administration of his estate or to prevent any question between heirs of advancements or heirship would be legitimate and proper reason for such arrangements.
In determining the taxability of a transfer, the intent or motive in making it is wholly immaterial. The question is: Was it made in contemplation of death? The motive, good or bad, is of no concern whatever.
If a transfer made in lieu of and to prevent the property transferred from passing by the laws of succession is a transfer made in contemplation of death within the meaning of the statute, there cannot be the slightest doubt that the transfers in question were properly subjected to the tax, and for that reason, and upon that ground, the judgment should be affirmed.