## Staudt Estate

*George B. Balmer* and *Snyder, Balmer & Kershner*, for appellants.

*Frederick J. Bertolet*, for Commonwealth.

MARX, P. J., March 4, 1950.—This is an appeal by Harold H. Staudt, executor of the will of William W. Staudt, deceased, Harold H. Staudt, trustee for William Wilson Staudt, 2nd, and for Constance Dillworth Staudt, under agreements of trust dated December 18, 1944, and under testamentary appointment, and by Elsie D. Staudt and Harold H. Staudt, individually, from the assessment for transfer taxes, on personal estate late of decedent.

William W. Staudt died on September 20, 1948. His will, dated February 22, 1944, was probated on October

2, 1948. . . . He appointed his son, Harold H. Staudt, executor of his will. The executor caused an appraisement of the personal estate of decedent to be made on November 19, 1948. The appraisement was filed on April 25, 1949, and reported personal estate aggregating the sum of $60,166.42. That aggregate included 100 shares of the capital stock of D. S. & W. Hosiery Company, par value $100, appraised at $250 a share, represented by certificates 38, 41, 42, 46, 54, 61, 65, 82, 84 and 85, each certificate being for 10 shares of the stock.

The register of wills, agent for the Commonwealth of Pennsylvania, assessed 180 additional shares of the capital stock of D. S. & W. Hosiery Company (appraising them $45,000, $250 a share) for transfer taxes due the Commonwealth. The transfers were made at the valuation of $250 per share, within one year prior to the death of testator. The transfers are presumed to have been made, by testator, in contemplation of his death. The transfers are the following:

(a) Transfer of December 19, 1947, of 30 shares to Harold H. Staudt, trustee for William Wilson Staudt, 2nd, decedent's grandson, under the trust agreement of decedent, settlor, of December 18, 1944, $7,500 (certificate 25A);

(b) Transfer of February 18 (11), 1948, of 30 additional shares to the trustee, to the use of the same beneficiary, William Wilson Staudt, 2nd, under the trust agreement of December 18, 1944, $7,500 (certificate 30A);

(c) Transfer of December 18 (19), 1947, of 30 shares of capital stock to Harold H. Staudt, trustee for Constance Dillworth Staudt, decedent's granddaughter, under a similar trust agreement of decedent, settlor, of December 18, 1944, $7,500 (certificate 26A);

(d) Transfer of February 18 (11), 1948, of 30 additional shares to the trustee, to the use of the same

beneficiary, Constance Dillworth Staudt, under the trust agreement of December 18, 1944, $7,500 (certificate 31A);

(e) Transfer of February 18 (11), 1948, of 30 shares of the aforesaid stock to Elsie D. Staudt, decedent's daughter-in-law, $7,500 (certificate 29A);

(f) Transfer of February 18 (11), 1948, of 30 shares of the aforesaid stock to H. H. (Harold H.) Staudt, decedent's son, $7,500 (certificate 28A).

Those six transfers aggregate the sum of $45,000.

. . .

Decedent died on September 20, 1948. His wife had predeceased him by almost one year. He was survived by a son, Harold H. Staudt, appellant, and two grandchildren, William Wilson Staudt, 2nd, aged about seven years, and Constance D. Staudt, aged about five years. Testator was owner of the controlling stock of the corporation, D. S. & W. Hosiery Company. Upon completition of a preparatory course in 1933, the son, Harold H. Staudt, assumed an active interest in the conduct of the business of the corporation. Two or three years thereafter he was elected to the presidency. Testator continued in active participation in the affairs of the corporation. Beginning in 1940, and continuing through every year thereafter, testator made gifts of corporate stock, or cash to be converted into corporate stock, to his son, to the son in trust for the two grandchildren, to Elsie D. Staudt, and Mrs. Cora Staudt, wife of testator. We so found. It is evident that the purpose of testator was to gradually shift responsibility and control of the corporation to the aforesaid members of his family. At his death he still owned 100 shares. The transfers assessed for tax to the Commonwealth constituted such annual gifts. At the time of his death testator had attained the age of 75 years. His wife had died in October 1947; testator was undoubtedly aware of his advancing years and, as years

advanced, of the approach of death. His interest in the affairs of the corporation naturally waned. From about the date of his wife's death he went under the care of his physician and was attended by nurses. He continued his interest in the affairs of the corporation, frequently went to the mill and always inquired about the state of affairs. He died of a cerebral hemorrhage. It is believed that he had suffered a slight cerebral hemorrhage immediately prior to the death of his wife. Prior thereto he had been in good health and led an active life. It is believed that with the occurrence of the third hemorrhage he died. Mentally his condition remained very good to the time of his death, but with the first hemorrhage his physical condition began to recede.

Section 1 of the Act of June 20, 1919, P. L. 521, as amended by the Act of June 22, 1931, P. L. 690, sec. 2, provides, inter alia:

"That a tax shall be . . . imposed upon the transfer of any property . . . in the following cases: . . . (c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death.

"If such transfer is made within one year prior to the death of the grantor, vendor, or donor of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, it shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this clause."

" 'By the term "in contemplation of death" is not meant on the one hand the general expectancy of death which is entertained by all persons, for every person knows he must die. . . . On the other hand, the meaning

of the term is not necessarily limited to an expectancy of immediate death or a dying condition. . . . The term "in contemplation of death" involves something between these two extremes. Nor is it necessary, in order to constitute a transfer in contemplation of death, that the conveyance or transfer be made while death is imminent, while it is immediately impending by reason of bodily condition, ill health, disease, or injury, or something of that kind. But a transfer may be said to be made in contemplation . . . if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer' ": Shwab v. Doyle, 269 Fed. 321, 328; Baker's Estate, 39 D. & C. 405, 408; Wanamaker's Estate, 8 D. & C. 569; Whalen's Estate, 33 Schuyl. 70; Livingood's Estate, 34 Berks 311.

"What prompts the making of such a conveyance rests upon the facts and circumstances surrounding each particular case. No general rule can be formulated which will fit all cases, but each case must be examined and determined on its own facts and circumstances, in the light of the experience which the courts have gained in dealing with such matters. For this purpose the donor's age, physical condition, and any action contemplated to be taken by him with respect to his health, as well as the length of time he survives the making of the transfers, are all proper matters to be considered in determining whether or not the act was done in contemplation of death. If, upon a consideration of all the surrounding facts and circumstances, it is apparent the donor's condition was such that he might reasonably have expected death at any time, and the disposition made of his property is such as he had contemplated making in that event or such as he might reasonably be supposed to have desired making in that event, or such as he might reasonably

be supposed to have desired to be made at his death, and no other moving cause is apparent for making the transfer at the time it was made, the gift will be deemed to have been made in contemplation of death, even though the transfer is absolute in form and such as would invest the donee with the absolute right to the property during the lifetime of the donor": People v. Danks et al., 289 Ill. 542, 124 N. E. 625; Edwards' Est., 1 D. & C. 497, 501.

The cited legislation makes taxable the transfer of property of decedent "in contemplation of the death" of the transferor. In addition to an admission or undisputed evidence of the transfer having been made in such contemplation, the statute establishes a presumption of such contemplation if the transfer is made within one year prior to the death of the transferor of a material part of his estate, and without an adequate valuable consideration. In the absence of sufficient testimony pointing to the contrary, the presumption becomes absolute and the assessment will stand. In this case the presumption is met and overcome by circumstances showing that more than 10 years before his death decedent adopted a definite plan of surrendering to various members of his family, annually, varying interests in the corporation substantially owned by himself. As he advanced in years his interest in retaining control of the corporation became less and the control was gradually and regularly shifted to others. He had succeeded in building the corporation and his plan was to pass the product of his building to those to whom he bore close relationship. That was the plan which he originally contemplated, and it was a contemplation of the success of that plan that led him to transfer periodically, more and more of his interest in the corporation. We find and hold that the transfers assessed for tax were part of the original and entire plan to transfer the corporate interest to

those of his choice and was not in contemplation of his death. We follow the theory expressed in McCarter Estate, 62 Montg. 280:

"His sudden and unexpected decease, his attitude toward his children, and his course of conduct in making them gifts, including gifts of stock in his company over a period of years, all negative the thought that the transfers in question were made in contemplation of death." We refer also to Estate of Roberts, 36 Luz. 66, and Baker's Estate, 39 D. & C., 405.

The appeal is, accordingly, sustained and the additional assessment is voided.