THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* AUGUSTUS ALBERT CARPENTER, Exr., Appellant.

*Opinion filed June 16, 1914—Rehearing denied October 7, 1914.*

1. STATUTES—*rule of construction where a statute of another State is adopted.* Where a statute is adopted from another State or country and the same has been previously construed by the courts of such State or country, the statute is deemed, as a general rule, to have been adopted with the construction so given to it.

2. INHERITANCE TAX—*words "in contemplation of death" construed.* The words "in contemplation of death," used in the Inheritance Tax statute, do not mean the general expectation of all rational mortals that they will die sometime, but means an apprehension of death arising from some existing infirmity or impending peril.

3. SAME—*what transfers made before passage of Inheritance Tax act of 1909 are taxable.* Under the proper construction of the language of clause 3 of section 1 of the Inheritance Tax act of 1909, providing that such tax shall also be imposed "when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property, or the income therefrom, by any such transfer, *whether made before or after the passage of this act,"* the only transfers made before the law took effect which are taxable are wills, (where death occurred after the law went into effect,) and gifts or voluntary transfers "made in contemplation of death," (when the death occurred after the statute became operative.)

4. SAME—*what interests are and are not subject to Inheritance Tax act.* Where the owner of bonds deposits them with a trustee under trust agreements made before the Inheritance Tax act of 1909 took effect, by virtue of which agreements the donor's children are given a vested interest in the bonds in equal shares, subject only to the life interest in the income, which by the agreements was to be paid to the donor while he lived and at his death to be paid to a named person for life, the interests of the children are not subject to tax under clause 3 of section 1 of the Inheritance Tax act of 1909 though the donor did not die until after the act took effect, where such trust agreements were not made "in contemplation of death;" but the contingent life estate of the person whose interest begins at the death of the donor is subject to tax under said clause 3.

5. REMAINDERS—*what does not convert a vested interest into a contingent remainder.* If the children of the owner of certain bonds are by the execution of a trust agreement and the delivery

of the bonds to the trustee given an unconditional vested interest in such bonds in equal shares, subject only to the life estates in the income, the possibility that both remainder-men may die before the life tenants does not convert the vested interest into a contingent remainder.

DUNN, J., and CARTWRIGHT, C. J., dissenting.

APPEAL from the County Court of Cook county; the Hon. JOHN E. OWENS, Judge, presiding.

HERRICK, ALLEN & MARTIN, and HERBERT POPE, for appellant.

P. J. LUCEY, Attorney General, and THOMAS J. YOUNG, for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is an appeal by the executor of the last will of Augustus A. Carpenter, deceased, from an order of the county court of Cook county fixing the amount of tax for which the estate is liable under the Inheritance Tax law, which went into effect July 1, 1909.

Augustus A. Carpenter died testate in 1911. On November 28, 1905, he executed a trust agreement, by which he deposited $155,000 in bonds with the First Trust and Savings Bank of Chicago. The trust agreement appointed the First Trust and Savings Bank trustee of said bonds, and authorized and directed said trustee to collect all interest payable during the continuance of the trust on said bonds and pay the same to said Carpenter during his lifetime. The trust agreement further provides that upon the death of the said Carpenter the trustee shall continue to collect the income from the securities in its hands and pay the same to Nellie Clark (who is also known in the record as Nellie C. Carpenter) during her natural life, in equal quarterly installments. The agreement recites that said securities were deposited with the trustee with the expectation

264 — 26

that the particular bonds will remain unpaid and continue
to produce a gross income of $6950 during the lifetime of
Carpenter and of Nellie Clark. The trustee was, however,
authorized, in case any of the said bonds were paid, to re-
invest the money in such other bonds or notes or securities
as might be approved by the said trustee, and to hold such
new bonds subject to the same trust as those that were first
deposited. Carpenter also reserved the right to require the
trustee to sell any or all of the bonds so deposited and to
purchase others to take the place of those so sold, and it
was also provided that after the death of said Carpenter
the trustee might sell the bonds and securities and purchase
others, provided that the written consent of Augustus Al-
bert Carpenter, son of Augustus A. Carpenter, or of John
E. Newell, a son-in-law, was obtained, in writing, to such
sale and purchase. The trustee was authorized to institute
suits or intervene in any suits necessary to protect the
securities in its hands and to defend any suits concerning
the securities, and to employ and pay counsel out of the
trust funds. Subject to these limitations full power and
control were vested in the trustee over the securities. The
trust agreement further provided that upon the death of
Nellie Clark the entire estate then in the hands of the
trustee should be paid over and transferred by said trustee,
share and share alike, to Augustus Albert Carpenter and
Amie C. Newell, children of Augustus A. Carpenter, and
in case of the death of either of said children leaving law-
ful issue him surviving, then such issue were to receive the
share of the trust estate which would have been taken by
the parent if living, and in case of the death of either of
said children without issue, then the survivor of the chil-
dren, or the issue of such survivor, at his or her death
would take the entire estate in equal shares. The trust
agreement made any inheritance tax that might be legally
due upon the succession a charge against the estate gener-
ally, and directed the executor to pay the same. On the

same day the trust agreement was executed Augustus A. Carpenter executed a will. The will gave Nellie Clark $10,-000, and contained the statement that the reason the bequest was not larger was because the testator had already provided other means that would give her a sufficient income during her natural life. The provisions of the will are not involved and it is not necessary to set them out. Subsequently, on July 27, 1908, and May 28, 1909, the decedent, by additional trust agreements, deposited additional bonds in the amount of $40,000 with the same trustee, and directed that said trustee receive and hold the said additional bonds subject to the same trusts and the same terms as those deposited November 28, 1905. All of the foregoing trusts were duly accepted by the trustee. All these trust agreements were duly executed, and the securities therein named were delivered to and accepted by the trustee before the Inheritance Tax law of 1909 went into effect. The county court of Cook county held that the life estate of Nellie Clark, as well as the interests of the two children created by the trust agreements, were subject to an inheritance tax under the statute of 1909. The Inheritance Tax act of 1909 repeals the former act on that subject which was passed in 1895.

Appellant contends that the transfers under the trust agreements are not taxable under the act of 1909. Whether they would be subject to taxation under the act of 1895, which was in force at the time the trust agreements were executed, has not been argued and cannot be considered or decided upon this appeal. The sole question involved upon this record is whether the county court erred in holding that the transfers under the trust agreements were taxable under the law of 1909.

The Inheritance Tax law of 1909 is a complete revision of the statute of 1895 with quite a number of new provisions added. The act of 1909 is broader in its terms than the previous act, and was designed to reach certain

voluntary transfers of property which could not be taxed under the prior statute. The present statute imposes a tax upon the transfer of property, real, personal or mixed, or of any interest therein or income therefrom, in trust or otherwise, not therein exempted, in the following cases: (1) When the transfer is by will or by the intestate laws of the State from any person dying seized or possessed of the property while a resident of this State; (2) when the transfer is by will or intestate laws of property within the State and the decedent was a non-resident of the State at the time of his death; (3) when the transfer is of prop- erty made by a resident of the State, or by a non-resident when the property is within the State, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect in possession or enjoyment at or after such death; when any such person, institution or corporation becomes beneficially entitled, in possession or expectancy, to any property, or the income therefrom, by any such transfer, whether made before or after the passage of this act; (4) when the transfer is made by virtue of a power of appointment derived from the owner of such property, made either before or after the passage of the act, the property thus transferred by virtue of such appointment is taxable in the same manner as though the property to which such appointments relate belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will.

The transfers in the case at bar, if liable at all, are taxable under the third clause of section 1 of the statute of 1909. This clause of our statute is taken from the transfer tax statute of New York of 1892. There is nothing in the context of our statute that indicates that our legislature, in adopting the language of clause 3 above set out from the New York statute, intended that the adopted statute should have any different construction from that placed upon the same language by the court of appeals

of New York prior to the enactment of the statute in this
State. When a statute is adopted from another State or
country and such statute has been previously construed by
the courts of the State or country from which it is taken,
the statute is deemed, as a general rule, to have been adopted
together with the construction so given to it. (Sutherland
on Stat. Const. sec. 404; *ReQua* v. *Graham,* 187 Ill. 67.)
This rule has been applied by this court to inheritance
tax cases. *People* v. *Griffith,* 245 Ill. 532; *People* v. *Union
Trust Co.* 255 id. 168.

In 1895 the court of appeals of New York handed down
an opinion in *In re Seaman's Estate,* 147 N. Y. 76; 41
N. E. Rep. 401. In that case Seaman, the testator, made
and executed his last will in January, 1876, and died the
following October. By the sixth clause of his will he gave
all the rest, residue and remainder of his estate to his ex-
ecutors in trust, to apply and pay over the income of one-
half thereof to his adopted daughter and niece, Elizabeth
Seaman, during her natural life, and upon her death said
undivided half was devised to the children of the testator's
nephew, George A. Seaman, who might be living at the
death of Elizabeth Seaman, share and share alike. The
other half was likewise given to the executors in trust, to
apply and pay the income to the testator's adopted son and
nephew, George A. Seaman, during his life, and upon his
decease said undivided half was devised to the children of
George A. Seaman who might be living at his death, share
and share alike. Both of the life tenants were living at
the death of the testator and both of them died in January,
1893. When the will took effect there were four children
of George A. Seaman living, and they were all living at
the time the litigation arose. There was no inheritance
tax law in New York when the will took effect and when
the estate which it created devolved, but the law of 1892
was in force when the life tenants died and the possession
of the remainders passed to the four children. The ques-

tion presented to the court was whether the vesting of possession, which occurred after 1892, was a transfer or succession then for the first time passing, and, as such, taxable under the act then in force, or if not then first passing, was the succession taxable by the explicit language of the statute, which provided, as does our statute, that such tax shall also be imposed when any such person or corporation becomes beneficially entitled, in possession or expectancy, to any property, or the income thereof, by any such transfer, *"whether made before or after the passage of this act."* The special term had held that the tax law did not operate retrospectively and subject to taxation rights of succession which accrued before the tax law came into existence, and that the remainders of the four children were not taxable. This judgment of the special term was reversed by the general term and the remainders held subject to the tax. The conclusion apparently was rested upon two grounds: (*a*) That no interest vested in the children of George Seaman until the death of the life tenants, or that the interest, whatever it was, was not such a beneficial interest in possession or expectancy as was made subject to taxation; (*b*) that the act by express language operated upon transfers which occurred before the act took effect. The judgment of the general term was reversed by the court of appeals upon both points and that of the special term was affirmed. The court of appeals held that the interest of the four children of George Seaman was a vested interest and took effect at the death of the testator. It was said that the succession passed to the four living children of George Seaman at the death of the testator, subject to be divested by the death of any of said children before the falling in of the life estate and subject to be opened up to let in the shares of any after-born children.

The decision of the New York court in the *Seaman case,* in so far as it holds that under the will the interests of the children of George Seaman became a vested interest

upon the·death of the testator, need not necessarily be approved by following the decision in the construction of the statute. Whether this court would hold the interests of the Seaman children vested or contingent is wholly immaterial. The New York court held the interest vested and construed the transfer law with reference to that character of interest. Under the trust agreements in the case at bar the interests of the decedent's two children were clearly vested upon the execution and delivery of the trust agreements and the securities therein named. There is here an unconditional and irrevocable gift of the securities to Augustus Albert Carpenter, Jr., and Amie C. Newell, in equal shares, subject to no limitation or restriction whatever except the life estate reserved to the donor and to Nellie Clark. The possibility that one or both of the remainder-men may die before the life tenant does not convert the vested interest into a contingent remainder. (*Smith* v. *West,* 103 Ill. 332.) The court of appeals of New York held in the *Seaman case, supra,* that where there was a gift or will so far complete that the donee or devisee became vested with the remainder prior to the taking effect of the transfer tax law such transfer was not subject to the tax unless in case of a gift, deed, bargain or sale made in contemplation of death, or, in other words, the court held in that case that the will having been executed and the testator having died before the statute went into effect the transfer was not subject to the tax, although the right of enjoyment of the remainder-men was postponed to let in a life estate until a period after the statute went into force. The decision in the *Seaman case* up to this point is in accord with the general rule that when the transfer is made, not in contemplation of death and not for the purpose of avoiding the succession tax but with the intention to convey the property absolutely and irrevocably to the transferee, the transfer is not subject to the tax. (*Matter of Masury,* 159 N. Y. 532; *Matter of Baker,* 178 id. 575; *Matter of Hess,* 187 id. 554;

*Matter of Keeney,* 194 id. 281; 202 U. S. 575; *Waugh's Appeal,* 78 Pa. St. 436; *Lacey* v. *State Treasurer,* 152 Iowa, 477.) This rule is clearly recognized by this court in *People* v. *Kelley,* 218 Ill. 509. The authorities hold that if the transfer is made "in view of death" the liability for the tax is incurred, and is unaffected by the circumstance that the enjoyment is postponed until the death of the transferer or by any uncertainty as to the identity of the ultimate donee. (*Rosenthal* v. *People,* 211 Ill. 306; *Merrifield* v. *People,* 212 id. 400; *In re Estate of Benton,* 234 id. 366.) Of course, the words "in contemplation of death," as used in these statutes, do not mean that general expectation of all rational mortals that they will die sometime, but it means an apprehension of death which arises from some existing infirmity or impending peril. (*Rosenthal* v. *People supra; In re Estate of Benton, supra.*) There is no claim here that the trust agreements were executed "in view of death," and the decision below does not rest on that ground.

The court below held that the language of the third clause of section 1 of the statute, that such tax shall also be imposed when any such person or corporation becomes beneficially entitled in possession or expectancy to any property or income therefrom by any such transfer, *"whether made before or after the passage of this act,"* expressly authorized the tax in question, and appellee insists such is the proper construction of the statute. The question thus presented is not free from difficulty. Considering the language of the statute literally and construing the same without regard to the consequences, it must be conceded that the decision of the court below is based on a possible meaning of the words found in this clause. By it the tax is imposed when any person becomes beneficially entitled, in possession or expectancy, to such property, whether the transfer was made before or after the passage of the act. If appellee's con-

struction be correct, the necessary effect will be to give the act a retrospective operation and it will have to be held to be applicable to all voluntary dispositions of property that have been heretofore made in this State. If it be conceded that the power, under the constitution, exists in the legislature to pass an act so broad and sweeping in its terms as this would be under the construction contended for, we would not be justified in attributing such an intention to the legislature upon any mere doubtful or ambiguous language. Ordinarily statutes will not be given a retrospective effect unless there is no other reasonable interpretation to be placed upon their language. Let it be supposed, to illustrate, that twenty or thirty years before this statute was passed a property owner conveyed all of his estate to his children as a voluntary gift, reserving to himself a life estate, only, in the property. The title vests in remainder, upon the delivery of the conveyance, in the donees. If the donor died after the statute of 1909 went into effect, under appellee's construction the conveyances to the children would be subject to the transfer tax. We are constrained to believe that the legislature never intended any such result. If the language of the statute does not mean this, the question is, what does it mean? Here we recur again to the *Seaman case,* in which the New York court of appeals dealt with this precise question. The language of the New York statute there under consideration is identical with the third clause of our statute of 1909, and that court held that the only transfers made before the law went into effect, liable to the tax, were wills where death occurred after the law went into effect, and gifts or voluntary transfers made "in contemplation of death, where the death occurred after the statute became operative." This construction seems to us the only reasonable one that can be given to the statute under consideration. A gift made in contemplation of death partakes somewhat of the nature of

a testamentary disposition of property, and there· can no great hardship result from holding that such gifts stand upon the same footing as wills, in so far as the liability to the transfer tax is concerned. This construction, as already shown, had been given to this language by the court of appeals of New York before our legislature adopted the same language in our statute.

What has thus far been said under the authority of the *Seaman case, supra,* applies to the estate in remainder of Augustus Albert Carpenter and Amie C. Newell, or those who by representation might take their respective estates, but the life estate of Nellie Clark rests upon a different basis. Under the terms of the trust agreement she came into the enjoyment in possession of her life estate upon the death of the donor. The income from the trust estate was payable by the trustee to Augustus A. Carpenter during his natural life. At his death the trustee was required to continue to collect the income and pay the same to Nellie Clark during her life. Thus, under the terms of the trust, the death of the donor was the event upon the happening of which Nellie Clark was to come into the enjoyment of her estate. Her interest was contingent upon her surviving the donor and did not become vested until after his death. This brings the gift to her directly within the third clause of the statute, which imposes the tax upon gifts "intended to take effect in possession or enjoyment at or after such death." The language above quoted from the statute has been construed by the court of appeals of New York in cases decided since the opinion in the *Seaman case* was handed down. · *In re Green's Estate,* 153 N. Y. 223; *In re Brandreth,* 169 id. 437; *Matter of Keeney, supra.*

In the *Green case, supra,* the court of appeals of New York, on page 227 of the opinion, uses the following language: "It is not important whether the trust instrument

was made in contemplation of death, or whether, upon the delivery thereof, the remainders vested in the nieces in such a sense as to constitute a gift *inter vivos* within the meaning of the cases cited by the learned counsel for the respondent. * * * The real question is whether the remainders which the nieces took under the deed were intended 'to take effect in possession or enjoyment' at or after the death of the donor.. Until her death they had no actual possession, or right to the possession, of the property. Since they could not receive any part of the principal or income until after her death, their right of enjoyment was postponed till the happening of that event. Whatever interest they may have had before the right of possession and enjoyment, depended upon the death of the donor. We think it quite clear that the remainders were transferred to the nieces in possession or enjoyment by an instrument intended to take effect for that purpose at or after the death of the donor, and so the case is brought within the terms of the statute. It matters not whether the transfer is by grant or by gift, so long as it was intended to take effect in possession or enjoyment at or after the death of the grantor or donor. The devolution of title is subject to the tax."

We see no escape from the conclusion that the life estate of Nellie Clark is subject to the inheritance taxes imposed thereon. In so far as the judgment below concerns her interests it is affirmed. In all other respects the judgment is reversed and the cause remanded.

*Reversed in part and remanded.*

DUNN, J., and CARTWRIGHT, C. J., dissenting:

The majority opinion holds that the only reasonable construction to be given to the third clause of the act of 1909 is, that the only transfers made before the law went into effect, liable to the tax, were wills where death occurred after the law went into effect and gifts or voluntary trans-

fers made in contemplation of death where the death occurred after the statute became operative, and that the words "in contemplation of death" do not refer to a general expectation of death but an apprehension of death from some existing infirmity or impending peril. We agree with this construction, and under it none of the remainders limited in the trust agreements in this case are subject to the tax under the act of 1909. The reason given in the illustration in the majority opinion of a conveyance made years before the statute was passed is, that the title vested in remainder upon the delivery of the conveyance. The opinion assumes that the remainder to the children of Augustus A. Carpenter was so vested. Whether that be so or not, the remainder to Nellie Clark was certainly vested. She had, when the agreements were made, a present fixed right of future enjoyment. That right was subject to no condition precedent to its taking effect in possession other than the determination of the particular estate. A remainder is vested when the person to take is unchangeably ascertained and the event upon which the remainder depends is bound to occur. Nellie Clark, the person who was to take, was a living, ascertained person and the death of Augustus A. Carpenter was bound to occur. The uncertainty as to whether she would live to enjoy the estate did not make the remainder contingent or her right to the enjoyment uncertain, though her death would put an end to the life estate which was vested in her. Before the statute of 1909 was passed she was, by virtue of the trust agreements, the owner of a vested interest for life, expectant upon the death of Augustus A. Carpenter, in all the property included in those agreements. There was no transfer subsequent to that act and therefore nothing upon which any tax could accrue.

It is said that the fact that the death of the donor was the event upon the happening of which Nellie Clark was to

come into the enjoyment of her estate brings the gift to her directly within the third clause of the statute, which imposes the tax upon gifts "intended to take effect in possession or enjoyment at or after such death." The same thing may be said of every gift in remainder, whether vested or contingent, and it applies equally to the remainders to the children of Augustus A. Carpenter, whose estates were intended to take effect in possession or enjoyment only at or after his death and the death of Nellie Clark. In fact, the statute does not differentiate between vested and contingent interests. The tax is imposed upon the transfer of property, and if such transfer is complete it matters not that some of the interests conveyed are vested and others contingent. The statute provides for the assessment of the tax upon the transfer of estates or interests in expectancy which are contingent or defeasible, and for the payment of such tax forthwith by executors or trustees out of the property transferred, and for the return of a portion of the tax when, upon the happening of the contingency, it appears that the estate limited should have paid a lower rate. The statute is not applicable to a transfer or conveyance completed before the enactment of the law, whether the interests transferred are vested or contingent, but, as stated in the majority opinion, the only transfers made before the law went into effect to which it is applicable are wills where death occurred after the law went into effect and gifts or voluntary transfers made in contemplation of death when the death occurred after the act went into effect.

In our judgment none of the remainders limited by the trust agreements are subject to the act of 1909; and the judgment of the county court should be wholly reversed.