(No. 17032.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
LOUIE FORMAN, Appellant.

*Opinion filed June 16, 1926—Rehearing denied October 6, 1926.*

1. INHERITANCE TAX—*gift from parent to child is not subject to tax unless in contemplation of death.* The Inheritance Tax act was not intended to apply to the gift by a parent of the whole or any part of his estate to his children as long as the gift is made simply as a gift and not with a purpose of evading the act by disposition of the donor's property just before or in anticipation of his death.

2. SAME—*meaning of words "in contemplation of death," in Inheritance Tax act.* The words "in contemplation of death," as used in the Inheritance Tax act, have reference to that apprehension of death which arises from some existing disease or infirmity of such a character as prompts one to make a disposition of his property, and they do not mean or refer to the general expectation that is common to all rational mortals that they will die sometime.

3. SAME—*what may be considered in determining whether gift is in contemplation of death.* In determining whether a disposition of property is made in contemplation of death, the donor's age, his physical condition, any action contemplated to be taken with respect to his health, the length of time he survives after making the transfer, and all declarations of the parties at and before the instrument was executed, should be taken into consideration.

4. SAME—*burden is on State to prove transfer subject to tax.* The burden is on the State to prove by a preponderance of the evi-

dence that a transfer is subject to inheritance tax as having been made in contemplation of death within the meaning of the statute or as being testamentary in character.

5. SAME—*when conveyance by a parent to child is not subject to tax.* A conveyance by a parent to his only son and heir nine months prior to his death is not subject to tax as being in contemplation of death, although the donor was of advanced age, where it is shown that, considering his advanced age, he was in good health at the time of the execution and acknowledgment of the deed and that the deed had been drawn up ten years before and the land turned over to the son, who had since been regarded as the owner, the donor having neglected to sign or acknowledge the deed at that time; and the fact that a specific part of the land covered by the deed is subject to tax because of the reservation of a life estate in the donor does not affect the question of the liability of the part not burdened with a life interest.

6. SAME—*gift with reservation of life estate is subject to tax.* A gift of land with a reservation of a life estate in the donor is subject to inheritance tax, as it does not take effect in possession and enjoyment until after the death of the grantor.

7. SAME—*promissory note is intangible property and taxable at domicile of deceased owner.* A promissory note is intangible property and as such is taxable at the domicile of the deceased owner notwithstanding the note is in a bank in another State, where the payee resides, to enable the payee to take away collateral as payments are made on the note.

APPEAL from the County Court of McLean county; the Hon. WILLIAM C. RADLIFF, Judge, presiding.

W. W. WHITMORE, (STELLA E. WHITMORE, of counsel,) for appellant.

OSCAR E. CARLSTROM, Attorney General, and ROYCE E. KIDDER, for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Lewis Forman, a resident and citizen of McLean county, Illinois, died intestate at Bloomington on October 31, 1924, leaving appellant, the only child he ever had, as

his only heir-at-law. He had in January, 1924, 739 acres of land, which is valued at $174,425. On January 23, 1924, nine months and eight days before his death, he executed and delivered to appellant, Louie Forman, a deed to that tract of land as a gift, reserving a life estate in eighty acres thereof, on which was situated his residence, all of which land is in McLean county, Illinois. He died seized of $1000 worth of land in Dallas county, Iowa, which is not in dispute in this case as to the court's jurisdiction to include it as taxable herein; and also died seized of two lots in Bloomington, Illinois, on which is situated a two-story frame building, remodeled and used as an apartment building, and which is valued at $4000. He also died possessed of $4000 of McLean county bank stock, on which was due a declared dividend of $80, $18,707.55 cash in the McLean County Bank, and $71,433.58 of promissory notes, including accrued interest, making a total value of real estate and personal property in Illinois of which he died seized and possessed, $98,221.13, which added to the total value of the land deeded to his son makes a total of $272,646.13. Appellant was appointed administrator of the estate of the deceased. The debts probated against the estate of the deceased amounted to $1709.59, including $665 for funeral expenses and $290.10 for nurse, doctor's bill and hospital charges in last illness and for grave and vault for deceased. The administrator's costs and attorney's fees paid and to be paid in the estate matters, including the expenses of a trip to Iowa to look after the estate's matters there, amounted to $10,079.05, making the total debts and costs in the estate $11,768.64. An appraiser was appointed by the county judge to appraise and report the value of the estate, the indebtedness and costs and expenses, and the amount of inheritance tax that should be paid by appellant on the estate. The appraiser made report of the value of the property, of the debts, costs, etc., and the inheritance tax to be paid and reported such matters to the court, in

322—15

which he found that the 739 acres of land deeded to appellant, the $4000 of real estate in Illinois of which the deceased died seized, and the $94,221.13 of bank stock, cash, notes, etc., amounting to a total value of $272,646.13, was taxable under the inheritance tax laws of Illinois after deducting a total amount of the debts of the deceased, costs of administration, etc., of $11,768.64, and the allowance of $20,000 in addition thereto for appellant's statutory exemption, making the net taxable value $240,877.49 and the inheritance tax thereon $10,452.65. Appellant prosecuted his appeal to the county court from that report and decision. The county court approved the report, findings and decision of the arbitrator in all matters and entered judgment for the amount aforesaid as the amount to be paid by appellant as inheritance tax, and appellant has prosecuted this appeal to review the judgment of the county court.

Two contentions are made by appellant on this appeal. First, that as to 659 acres of the 739 acres conveyed to him by his father the deed was not made in contemplation of death and was not subject to an inheritance tax. This tract of land was valued at $154,425 and was all farm land. The land reserved from the deed for life was the home farm or part of the home farm. The Inheritance Tax act cannot apply to this conveyance unless it is testamentary in its nature or was made in contemplation of death. The Inheritance Tax act was not intended to prevent a parent from giving the whole or any part of his estate to his children as long as the gift is made simply with that view and not with a purpose of evading the act by disposition of his property just before or in anticipation of his death. The words "in contemplation of death," used in the statute, have reference to that apprehension of death which arises from some existing disease or infirmity of such a character as prompts one to make a disposition of his property. They do not mean or refer to the general expectation that is common to all rational mortals that they will die some time.

(*People* v. *Carpenter*, 264 Ill. 400; *People* v..*Danks*, 289 id. 542; *Rosenthal* v. *People*, 211 id. 306.)   It was said in the last case cited, that a gift made at a time when the donor is looking forward to his death as impending, and in view of that event, is within the language of the statute and subject to the tax.   In the foregoing cases it is also held that in determining whether a disposition of property is made in contemplation of death, the donor's age, his physical condition, any action contemplated to be taken with respect to his health, the length of time he survives after the making of the transfer, and all declarations of the parties at and before the time the instrument was executed, should be taken into consideration.

In this case the donor was a little over eighty-nine years of age when he made the conveyance and was over ninety years of age when he died.   His physical condition is described by the physician who had attended him eight or ten years previous to his death as unusually good for a man of his age.   He was fully dressed in his every-day and usual apparel when the notary came to his house to take the acknowledgment of the deed.   He had not previously made any arrangements to have any operation performed or take any particular step to arrest any affliction or condition of his body or to put himself in anyone's care for treatment of a serious malady that would tend to hasten his death or result in his death suddenly or before the treatment ended. He had at the time he made the deed a slight prostatic condition, or had had previous to the making of the deed, and he also had, according to the testimony of his physician, an "old man's heart."   The physician expressly testified that he did not have any organic trouble of the heart and that his condition and physical health was unusually good for a man of his age.   The immediate cause of his death was an enlarged prostate gland.   This was the trouble that put him to bed two or three months before he died.   He also was troubled with constipation.   The physician also stated that

he naturally would have hardening of the arteries and the general physical condition that attends advanced age, but he did not say that he had hardening of the arteries. Before he .went to bed with prostatic trouble his physician states that he only visited him five or six times a year for five or six years or more, and then only for some trivial thing.

It appears from the testimony of the notary public and other witnesses that at the time the deed was acknowledged, · or January 23, 1924, the deed signed and acknowledged had been previously drawn at the request of the deceased July 14, 1914, or about ten years before it was finally executed. The donor expressly told the notary that the land already belonged to his son and that he had. previously turned it over to him as his, and he thought that he had already fixed up the deed and turned it over to his son. It appears from the evidence that this was the occasion for his having the notary come out on that day,—that is, the ascertainment of the fact that the deed had not been signed and acknowledged at the time it was written; and that he had discovered this by an inquiry of his son if he had had the deed recorded and just a short time before the final acknowledgment was taken. It was proven by all the tenants that had been on the lands deeded that they rented the lands before 1914 from the donor and paid him the rent therefor, and that after 1914 they rented the lands from appellant, except the eighty acres reserved in the deed, and that the donor told them that they would have to go to appellant for all information and for the renting of it and that he had nothing more to do with it. It is also proved and undisputed that appellant collected the rents after 1914 and appropriated all of them to his own use, and that the father treated him as the owner during all those years and spoke of him as the owner.

Appellee relies particularly on the evidence of a sister of the deceased, who was older than he, and who testified that he sometimes had spells with his heart, and during those

spells would rub his heart and the trouble would go away. She testified that he had these spells for two or three years before his death, but that they never put him to bed and that he was soon over them. She also testified that he was feeling good when he signed the deed and that he was fully dressed as he ordinarily dressed, and that he signed the deed because he wanted to give the land to Louie and did not want to be bothered with it any more. It further appears that there was a will signed about two years before the deed was drawn, or about 1912, but that it was destroyed by the donor, and we attach no importance to this instrument or its destruction. It is clear from the notary's evidence the deed was drawn on the date above named, for when the notary came to take the acknowledgment he erased the previous date by drawing a pen through the figures indicating the date and interlining the date on which the acknowledgment was taken. We think it is also important to take into consideration in this case the character of the property deeded as well as the character and the amount of property retained by the donor. The property so retained for his life was his home, and all the rest of the property in Illinois retained by him was income-producing property and easily handled and managed. It is also shown that this property so retained produced ample income and more than was necessary for his wants.

The burden of showing that a transfer is subject to the inheritance tax rests upon the State. (*In re Minor,* 180 Pac. 813; *In re Wadsworth,* 166 N. Y. Supp. 716.) We hold that the State in this case has not proved, by the preponderance of the evidence, that the deed to the 659 acres of land was made in contemplation of death, within the meaning of the statute, or that the conveyance as to that land was testamentary in character. There was absolutely no expression of any kind by the testator at the time he signed and acknowledged the deed, or at the time that it was written, that indicated that the donor thought that he

was going to die or that he had a malady or disease that would soon end his life. The court erred in holding the lands described in this deed subject to the inheritance tax, except the eighty acres, more or less, that was reserved from the deed. The testator reserved control and management of that land during his life and the appellant was not to have control of it during that time. It was therefore subject to inheritance tax under the holdings in *People* v. *Moir,* 207 Ill. 180, and *People* v. *Kelley,* 218 id. 509, because the deed was of a testamentary character, or, rather, was not to take effect in possession and enjoyment until after death of the grantor; and where it is also held that where a part of the gift is to so take effect and a part is not, a part may be taxed and the remainder thereof not subject to the tax.

The second contention of the appellant is that $52,000 of the notes and mortgages is not subject to the inheritance tax. This amount was represented by a note belonging to the donor in his lifetime which was in the bank in Iowa known as Valley National Bank, at DesMoines, and held there for the purpose of collection and payment of the note, under the agreement of the payor of the note with the payee or the deceased that it should remain in the bank aforesaid, so that when payments were made on the note the bank could release to the payor collateral notes to the extent of the payments that had been deposited by the payor with the note as collateral or security. It is apparent that the bank held the note as the agent of the payee for collecting the interest and for the benefit of the payor to return to him collateral equal to the payments. We attach no significance to the fact that the note was in Iowa under those conditions and not in Illinois in the possession of the payee. The situs of intangible property, to which division of property a promissory note belongs, in contemplation of law is the domicile of the testator. The rule is well established by the decisions of this court and of the United States courts

that the situs of intangible property owned by a decedent in his lifetime is the domicile of the decedent, and that an inheritance tax on such property should be assessed at the domicile of the decedent, only, as between the contentions of States over that question, and that promissory notes, etc., are intangible property. (*Davis* v. *Upson,* 230 Ill. 327; *Cooper* v. *Beers,* 143 id. 25; *National Reserve Ins. Co.* v. *Shipton,* 314 id. 472; *People* v. *Blair,* 276 id. 623; *Frick* v. *Commonwealth of Pennsylvania,* 45 Sup. Ct. Rep. 603.) In the last case cited the Supreme Court of the United States in a well considered case held that tangible personal property was taxable at the situs or place where the property is situated, only, and that intangible property was assessable, under the inheritance tax laws, at the domicile of the testator or of the decedent, only, and that for a State to doubly tax either character of property in violation of the above rule was in violation of the due process clause of the constitution.

Appellant makes the claim here that he is informed by the authorities in Iowa that he will be taxed for this note of $52,000 in Iowa and that he cannot escape such taxes there. Appellant also puts great stress upon the fact that the actual note in this case is in Iowa and was there at the time the deceased died. The note is only evidence of a debt due from the payee in Iowa to the decedent, and unquestionably, in our minds, is intangible property. We hold that the note was properly assessed by the county court.

For the reasons aforesaid the order or judgment of the county court is reversed as to the 659 acres of land aforesaid and affirmed as to all of the other property aforesaid taxed by the court, and the cause is remanded.

*Reversed and remanded.*