WILLIAM L. HODGKINS AND MRS. J. L. HODGKINS, EXECUTORS, ESTATE OF JEFFERSON HODGKINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9964.   Promulgated June 5, 1928.

*John E. Hughes, Esq.*, for the petitioners.
*James V. O'Callaghan, Esq.*, for the respondent.

OPINION.

LOVE: This is an estate tax case. At a date subsequent to the passage of the Revenue Act of 1918, decedent transferred 900 shares (par value $100) of the common capital stock of a corporation to a trust company under a trust agreement reserving the income from the stock to the donor for his lifetime; thereafter the income was reserved to the widow during her lifetime. After the death of the widow the trust continued for ten years, the income to go to the son of decedent. At the end of the ten years the son could take possession of the property if he chose, or he could leave it in trust, and receive the income. The trustee had full powers of management, control, purchase and sale. The son was entitled to direct the voting of the stock after death of the widow. The right was denied to any beneficiary to transfer, assign, anticipate or encumber his or her interest in the trust estate or the income therefrom prior to actual distribution by the trustee. Decedent died less than two years after the transfer in trust and prior to the repeal of the Revenue Act of 1918.

The return filed for estate-tax purposes included in the gross estate an amount of value attributable to the 900 shares of stock, held by the trustee, based on a value of $128.22 per share. In determining the estate tax, respondent has valued the stock at $259.68 per share.

The first issue presents a question of the value for estate-tax purposes of the 900 shares of stock held in trust and also of 76 shares of the same stock admittedly belonging to decedent. The total outstanding stock was 3,000 shares. The son of decedent held 1,961 shares. The combined holdings of father, son and trustee aggregating 2,937 shares, were therefore, very " close." The corporation was

a "family enterprise." The stock was not listed on any exchange. It had not been offered for sale and had not been the subject of an offer to purchase. A fair value must be arrived at by other means than market sales or quotations. Respondent has valued the stock through the assets behind it. Petitioners contend that the net values assigned to the assets of the corporation by respondent, based upon the books, with adjustments to reflect depreciation and depletion allowed for income-tax purposes, together with the appreciation in value attributable to the quarry lands as of March 1, 1913, yield a value based on a net worth which is far in excess of the fair market value of the capital stock. This result is attributed in part to over-valuation of the plant and the quarry lands of petitioner. The testimony is conflicting with reference to the plant. We believe that, in spite of breakdowns, it was in good condition. The record does not disclose a value in 1921 of the machinery and equipment other than its book value. There is no evidence of the extent of the deposits of stone. Purchases of insignificant amounts of contiguous land are testified to. There is little satisfactory evidence upon which to base a finding of any definite amount. We are not convinced of error in the amount of the net worth determined by respondent.

The further contention of petitioners relates to the fair market value for the stock as distinguished from the net worth of the corporation. It is claimed to be far below the net worth due to the prevailing business depression and to a failure to pay any dividends since 1913. We are able to agree with petitioners that the market values of stocks frequently are below the book values and also that the question of dividends is a valuation factor, yet we think in this case the value of the assets, all tangible, may not be disregarded to the extent required by an acceptance of the opinions of the expert witnesses for petitioner as expressed in answer to questions embodying numerous hypotheses. This is apparently realized by petitioners for they offer to accept a value in excess of the experts' valuations.

Not long before the death of decedent, the corporation issued, and a conservative banking organization underwrote and recommended, a mortgage bond issue of $500,000 par value. The transactions must have been the occasion of a consideration of the values of the assets of the corporation, particularly of the fixed assets upon which would rest the main reliance for the security for the bonds. Even though there is no further evidence before us in this connection, we are of the opinion that the amount of the bond issue is indicative of an approximate value of the fixed assets which, combined with the unquestioned amount of the net current assets, will yield a value for the stock considerably in excess of the value claimed by peti-

tioner. The unavoidable conclusion is that the low value claimed by petitioner is not sustained by the record taken in its entirety, and furthermore the extent of the alleged error, if any, of respondent, can not be determined.

The second issue relates to the inclusion in the amount of the gross estate of the value of the 900 shares of stock previously transferred in trust. Petitioner contends that section 402 (c) of the Revenue Act of 1918, does not apply, since the transfer took effect immediately, and furthermore, the provisions of the taxing statute are unconstitutional.

The issue is not controlled by *Nichols* v. *Coolidge*, 274 U. S. 531, where the transfer in trust was made prior to the passage of the taxing act, nor by *Schukert* v. *Allen*, 6 Fed. (2d) 551, where no interest whatever in the property was reserved. We have previously had occasion to consider a transfer of corporate stock with reservation, for life, of the income therefrom in *Una Libby Kaufman, Executrix*, 5 B. T. A. 31, and we held that under the Revenue Act of 1921, the amount of the value of the stock should be included in the gross estate. We cited *In Re Brandreth's Estate*, 169 N. Y. 437; 62 N. E. 563, wherein the court said:

The only income stocks can produce is the dividend declared thereon, and the reservation of the dividends for life is the reservation of an estate for life. A stockholder has no title to the earnings of a corporation before a dividend is declared. Until that time the earnings pass with the stock as an incident thereof, * * * though a remainder may vest in title at its creation, it cannot vest in possession until the determination of the prior estate.

The provisions of the Revenue Act of 1918, so far as material here, were identical with those of the Revenue Act of 1921. The issue presents the same question of interpretation of the phrase " take effect in possession or enjoyment at or after death." We do not lack appreciation of the confusion due to the various conflicting interpretations as pointed out in *Frew* v. *Bowers*, 12 Fed. (2d) 625, 627. However, after consideration of all of the provisions of the trust agreement and referring to an asset of the characteristics peculiar to corporate common stock, we believe that it can not be said, in the instant case, that any measurable amount of either possession or enjoyment took effect as distinguished from vested title prior to the death of decedent. The entire value attributable to the stock in our opinion is the amount properly to be considered in the value for estate-tax purposes. Cf. *People* v. *McCormick*, 158 N. E. 861; 327 Ill. 547; *People* v. *Kelley*, 75 N. E. 1038; 218 Ill. 509; *People* v. *Carpenter*, 106 N. E. 302; 264 Ill. 400.

*Judgment will be entered for the respondent.*