(No. 20244.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE
    CONTINENTAL ILLINOIS BANK AND TRUST COMPANY,
    Exr., Appellant.

*Opinion filed April 23, 1931—Rehearing denied June 3, 1931.*

McCULLOCH & McCULLOCH, (HUGH W. McCULLOCH, of counsel,) for appellant.

OSCAR E. CARLSTROM, Attorney General, and HARRY A. ASH, (JOSEPH ROLNICK, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal by the executor of the last will and testament of Edmund D. Hulbert, deceased, from a judgment of the county court of Cook county approving and confirming an order of the county judge fixing the amount of inheritance tax on the estate of the decedent.

Edmund D. Hulbert, a resident of the city of Chicago, died testate on March 30, 1923, at the age of sixty-five years. By his will executed on March 20, 1923, he devised and bequeathed his entire estate to his wife, Emily S. Hulbert. His estate was appraised, for the purpose of assessing the inheritance tax, as follows: Total value of personal property, $436,263.83; debts, not secured by real estate, $128,545.95; Federal estate tax, $6528.72; costs of administration, $12,000, making a total deduction of $147,074.67, and leaving as the net value of personal property, $289,-189.16; total value of real estate, $55,000; total net estate, $344,189.16. After the statutory exemption of $20,000 was allowed a tax of $18,418.92 was imposed on the total net balance of $324,189.16. On February 13, 1920, the deceased transferred to his wife, by gift, 265 shares of stock of the Merchants' Loan and Trust Company, 100 shares of common stock of the Stover Wheel and Engineering Company, 100 shares of preferred stock of the Kelsey Wheel Company, and certain real estate—a residence lot in the city of Chicago. The county court found that this property given to Mrs. Hulbert by her husband was transferred in contemplation of death and was properly included in the appraisement of the estate for the purpose of assessing the

inheritance tax. The stock so transferred was valued as of March 30, 1923, the date of the death of the testator, at $120,125. At the time it was transferred to his wife the deceased borrowed $50,000 in the name of his wife and deposited the stock certificates as collateral security for the loan. This loan was re-paid by the wife from her own funds. Credit was allowed for this $50,000, and the net value of the stock transferred was fixed at $70,125. The value of the residence lot transferred to Mrs. Hulbert was fixed as of March 30, 1923, at $55,000.

The first contention made by appellant is, that the county court erred in holding that the transfer of property on February 13, 1920, was made in contemplation of death. The deceased at the time of the transfer of this property to his wife was an active and successful banker, sixty-two years of age. He was president of three banks at that time, the Merchants' Loan and Trust Company, the Illinois Trust and Savings Bank and the Corn Exchange National Bank, and he was arranging for the consolidation of those banks in the future. It had been determined that he was to be president of the consolidated bank when the banks should be consolidated. He worked every day at the banks and walked every day from his home to the banks, more than a mile. He had suffered some trouble from indigestion "all his life," and had made a practice of having himself looked over by a doctor occasionally. Except the fact that he had suffered occasionally from indigestion his health otherwise was very good. During the first half of February, 1920, he was at the banks daily, as had been his custom theretofore, and appeared to be in his usual state of health. He had, however, been planning to go to a hospital and have some kind of an operation performed. It does not definitely appear from the record whether the operation he had been planning was the same operation that was later performed in February, 1920. On the day the property was transferred to his wife, Friday, Febru-

ary 13, 1920, he walked from his home to the banks and attended to his usual and customary duties and was apparently in good spirits and good health. He worked as usual on the following Saturday and on that evening went to the Commercial Club dinner. After he returned home from the dinner he suffered pain and was attended by a doctor on Sunday. The doctor found he was suffering from stoppage of the bowels and would have to have an operation. Deceased went to his office on Monday morning and presided at an officers' meeting at one of the banks as usual. Following that meeting he went to the hospital on February 16, 1920, and was operated on for stoppage of the bowels. He was in the hospital for about three weeks, and then he and his wife went to Arizona and stayed there for about a month. He and his wife had planned during that winter to make the trip to Arizona, and in January, 1920, had made reservations at a hotel for March 10 and did not at any time thereafter cancel those reservations. After he returned to Chicago from Arizona he was apparently in good health and worked daily at his banks, as he had before the operation, until July 12, 1922. Following that date he suffered for a few months from neuritis. He died March 30, 1923, from acute inflammation, having been ill for about three weeks with "pneumonia or flu."

Mrs. Hulbert testified that the reason the property was transferred to her was that the deceased wanted her to have an independent income; that he told her he gave her the Stover Wheel and Engineering Company stock, 100 shares, appraised by the appraiser at $2000, to take the place of some Hart-Par stock that he had previously given her and which "went to pieces;" that the real estate was bought a short time before the late war for the purpose of building a residence on it, but because of the war and the resultant high cost of building they had put off building; that the real estate was always "considered hers;" that she had selected the lot for their residence and it was to be her

lot; that deceased had made gifts of property to her amounting to about $100,000 over a period of five years previous to his death; that on December 21, 1920, he gave her 100 shares of stock of the Chicago and Northwestern Railroad Company; that she sold some of the stock that was transferred to her on February 13, 1920, during the lifetime of her husband, and bought other stock with the proceeds, and that she received and retained for herself all dividends on the stock after the transfer and reported the amount so received in her Federal income tax returns for 1920 and 1921 and paid the taxes thereon. At the time that she received the gifts in question, February 13, 1920, Hulbert and his wife had been married twenty-four years, and at the time of Hulbert's death they had never had a child.

Over and above the shares of stock which Hulbert transferred to his wife, he owned 111 shares of stock in the Corn Exchange National Bank, 221 shares of stock in the Illinois Trust and Savings Bank, 310 shares of stock in the Merchants' Loan and Trust Company, and other personal property, of the total value of $366,138.83. The total value of the stock given to Mrs. Hulbert on February 13, 1920, over and above the Stover Wheel and Engineering Company stock, which was given to her to replace the Hart-Par stock, which had become of no value, was $68,125, or less than one-sixth of all the personal property that he owned at that time. The real estate aforesaid that he gave to his wife, as already shown, had been really a gift to his wife prior to that time but had not been previously conveyed to her by oversight. Hulbert had been in the habit of making gifts to his wife all during their married life, both before and after February 13, 1920, and according to the evidence he made those gifts so that she might have an independent income. He did not have any relapse or ill-effects from his operation and died as a result of acute inflammation of the heart, caused by a disease he never had during the year 1920.

The Inheritance Tax act does not apply to a transfer of property made as a gift simply and not with the purpose of evading the act by the disposition of property just before or in anticipation of death. For the act to apply to a transfer of property it must be testamentary in its nature or made in contemplation of death. The words, "in contemplation of death," used in the statute, have reference to that apprehension of death which arises from some existing disease or infirmity of such a character as prompts one to make a disposition of property, and they do not mean or refer to the general expectation that is common to all rational mortals that they will die some time. In determining whether a disposition of property is made in contemplation of death, the donor's age, his physical condition, any action contemplated to be taken with respect to his health, the length of time he survives after making the transfer, and all declarations of the parties at and before the transfer, should be taken into consideration. (*People* v. *Forman,* 322 Ill. 223; *People* v. *Carpenter,* 264 id. 400; *People* v. *Northern Trust Co.* 324 id. 625.) The only evidence in this case which tends in the least to show that the gifts made on February 13, 1920, were made in contemplation of death is the fact that the deceased was at that time contemplating having a surgical operation of some kind performed. So far as the evidence shows, the deceased and his physicians were the only persons who knew, at the time the gifts were made, that such operation was to be performed, and it was not definitely known that this operation would have to be performed until the following Sunday after the gifts were made on Friday. Mrs. Hulbert did not know that an operation was to be performed until Sunday, three days after the gifts were made, at which time he was suddenly taken sick by reason of the stoppage of his bowels. The evidence shows that the deceased had not discussed the subject of death with either his wife or Estes, one of his closest business associates, or with any other

person. Prior to the operation he was in good spirits. He attended a meeting of the officers of a bank on the morning before he went to the hospital and joked with Estes ten minutes before he left the bank to go to the hospital for the operation. He did not make his will until more than three years after this operation was performed and willed all of his property to his wife. There was no expression or action of any kind by the deceased at or prior to the time he made the gifts to his wife on February 13, 1920, that indicated that he thought he was going to die or that he had a malady or disease that would soon end his life. All of his words and all of his actions, as above shown by the evidence, indicated clearly that he was not expecting to die soon from any malady or disease. He did not even cancel his reservations at the hotel which he had made with a view that he and his wife would make the intended trip and occupy his reservations, and he made that trip after he had recovered from the operation, in time to occupy his reservations as he had planned.

The burden of showing that a transfer is subject to the Inheritance Tax act is on the State. (*People* v. *Northern Trust Co. supra; People* v. *Forman, supra.*) The statute is to be strictly construed against the State and in favor of the tax-payer. The motive that prompts the making of such a conveyance depends upon the facts and circumstances surrounding each particular case. "No general rule can be formulated which will fit all cases, but each case must be examined and determined on its own facts and circumstances, in the light of the experience which the courts have gained in dealing with such matters. For this purpose the donor's age, physical condition, and any action contemplated to be taken by him with respect to his health, as well as the length of time he survives the making of the transfer, are all proper matters to be considered in determining whether or not the act was done in contemplation of death," or in determining whether or not the conveyance was made

to evade payment of the inheritance tax. *People* v. *Danks,* 289 Ill. 542.

In the case of *People* v. *Kelley,* 218 Ill. 509, the facts are, in substance, that Kelley executed a conveyance in trust to the Illinois Trust and Savings Bank on March 1, 1900, and died October 25, 1900, at the age of sixty-nine years, and that he had been troubled with valvular disease of the heart for many years and was confined to his house from an attack of heart disease at the time he executed the conveyance. His physician testified that Kelley was subject to those attacks; that they were caused by over-exertion; that he had theretofore recovered from such attacks, and that there was no apprehension of his immediate death at the time the deed was executed, and that he recovered his usual health shortly after the deed was executed and remained in that condition until about a month before he died. This court said in that case that it had been unable to discover any evidence in the record which tended even remotely to show that Kelley thought he was about to die at the time he executed his deed or that he made his deed in contemplation of death. "It is not the object of the statute to prevent a parent from giving the whole or any portion of his property to his children during his lifetime, if he so desires."

Our Inheritance Tax statute was taken from the New York law, and the rulings of the courts in that State are pertinent in the consideration by this court of our statute. In *In re Crary's Estate,* 64 N. Y. Sup. 566, it is said, on page 568: "The statute was evidently intended to reach absolute transfers of property when made under a certain condition, viz., when the transferror was contemplating death; that is, the thought of death has taken so firm a hold on his mind as to control and dictate his actions regarding his property, and the business is transacted while contemplating death, and considering what conditions would arise or exist in the event of death without making the

transfer, or, to be more specific, the contemplation of death is the sole motive and cause of the transfer. The transferror, realizing and contemplating that he is about to die, wishing certain of his property to pass in a different manner than it would under the statute or by the terms of a will theretofore made, makes the transfer 'in contemplation of death,' and such transfer is taxable, whether made one day or one year prior to death, but if made with other motives and for other causes it is not taxable no matter when made, as it cannot be presumed that the legislature intended to place any limitation upon the inherent right of a person to give away his property whenever and to whomsoever he desires."

Before a transfer of property can properly be held to be included within the purview of the statute the evidence should show not only an expectation that death was near at hand, but that such expectation and fear were the direct and moving cause of the gift. Appellee has not sustained the burden of proof resting upon it to prove, by a preponderance of the evidence, that the transfers of property on February 13, 1920, were made in contemplation or fear of the death of the donor or that they were made with a view of evading the payment of the inheritance tax.

There are other questions raised by the appellant on this record, but it will not be necessary or proper to consider them, inasmuch as we have held that the gifts in this case are not taxable under the statute in question.

The county court erred in holding that such transfers were subject to the inheritance tax. The judgment of the county court is therefore reversed and the cause remanded to that court, with directions to enter a judgment in accordance with the views herein expressed.

*Reversed and remanded, with directions.*