(No. 26698.—<span style="background:black;color:black">    </span>
THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
HENRY SCARBOROUGH *et al.*, Appellants.

*Opinion filed November 17, 1942.*

HURFORD & FEIGENHOLTZ, (HAROLD L. FEIGENHOLTZ, and EUGENE A. BUSCH, of counsel,) for appellants.

GEORGE F. BARRETT, Attorney General, (ALBERT E. HALLETT, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The recipients of gifts made during his lifetime by Peter Brachetti prosecute an appeal from an order of the county court of Cook county confirming an inheritance tax assessment of $2240.13 against them. The sole issue presented for decision is whether the gifts to the donees, appellants here, were made in contemplation of death within the purview of subsection 3 of section 1 of the Inheritance Tax Act (Ill. Rev. Stat. 1941, chap. 120, par. 375) which, so far as relevant, provides: "Every transfer by * * * gift made within two years prior to the death of the * * * donor without an adequate valuable consideration in money or money's worth, shall, *prima facie,* be deemed to have been made in contemplation of death within the meaning of this act."

Peter Brachetti, a resident of Cook county, a widower, eighty-three years of age, died testate on May 30, 1940. He left no heirs-at-law surviving him. Brachetti had been engaged in the jewelry business, retiring in 1928. By his will, he bequeathed specific legacies amounting to $4000 to persons residing in Germany, $500 to Alexian Brothers Hospital, $500 to the German Old People's Home, in Forest Park, $1000 to Ethel Scarborough, $1000 to Lillian Tosch, and $1000 to Dora Tosch. The residuary beneficiaries were four Chicago charitable institutions. Upon probate of his will, the inventory filed listed cash, securities and other personal property, aggregating $30,123.59,

and, also, fifty shares of stock of a mining company, the value of which is not disclosed. The amount of the probated estate does not include gifts, the undisputed value of which is stated to be $31,353.82.

Ethel Scarborough and Henry Scarborough, her husband, were the principal donees of the gifts in controversy. The former testified that she and her family were personal friends of Brachetti and that beginning in 1936, after the death of Brachetti's wife, she performed certain personal services for him; that in December, 1939, Brachetti talked with her husband and herself about his health "and about what we were going to do about his cash and that sort of thing," and that they called Dr. E. W. White, an urologist, who recommended Brachetti's transfer to the Alexian Brothers hospital. Brachetti entered the hospital Christmas day, 1939. Before leaving his home he turned over all his affairs to Scarborough, gave him the keys to his apartment and safety-deposit box, a power of attorney to enter the box, and his bank books. When taken to the hospital he turned over to Scarborough all the cash he had on his person, and directed him to take care of it. The second day after Christmas, Brachetti executed a second power of attorney to Scarborough, who obtained transfers from the bank, brought them to the hospital, and Brachetti signed them in Ethel Scarborough's presence. Mrs. Scarborough testified that upon her return from a trip to Florida, in January, Brachetti directed her to take specified bonds having a par value of $15,000; that he also told her she could have all the cash he then possessed, namely $3979 in his safety-deposit box and $4074.20 in a savings account, and that he named the persons he desired to remember. She also testified to numerous conferences with Brachetti between January 20 and February 17, 1940, during which he examined a list she had made of the contents of his box, discussed his bonds, having a value in excess of $40,000; and stated he desired to distribute "some of them to us

and to one or two more people who had been very kind to him during the preceding four years." According to the witness, Brachetti said that if he lived ten years he could not use up his money, and that she had been so wonderful to him he wanted to make her a gift in appreciation, and talked about the cash in his safety-deposit box, kept there in case of emergency since the bank moratorium. From Ethel Scarborough's testimony it appears that he spoke of three waitresses, Edna Larsen and her two sisters, Hilda and Elsie Fisher, and declared he wanted Edna to have $500, Hilda and Elsie $250 each, Chris Zacharias, a waiter, $200, Alexian Brothers hospital $500, Henry D. Thorsen, an employee of a Chicago bank, $1000, because of his kindnesses and courtesies over a period of twenty-five years, Henry Scarborough a $5000 municipal bond, and the balance to be divided among her mother, Dora Tosch, her sister, Lillian Tosch, and herself. She added that Brachetti expressed the desire she (Ethel Scarborough) keep $3000 in corporate bonds, and all his cash. February 17, 1940, according to her testimony, Brachetti again checked the list of bonds, and when she informed him she had not yet transferred the savings account to her name, reiterated that all his money, both in the vault and the savings account, belonged to her. Although it appears from her testimony that Ethel Scarborough had been the recipient of gifts from Brachetti and his wife, the last gift of value prior to the gifts involved in this proceeding, a three-leaf clover pin set in diamonds, was made in 1937.

Further testimony of Mrs. Scarborough discloses that on May 1 Brachetti told her he wanted his summer clothes brought to him because he was going to sit in the garden at the hospital, and that she obtained his summer suits, had them cleaned and delivered to the hospital. Brachetti died at the hospital on May 30.

Dr. White, who attended Brachetti while he was in the hospital, saw him daily, commencing December 25, 1939.

On the day named, he made an examination of Brachetti which he summarized: "The old gentleman's physical status was a picture of an old man eighty or eighty-four years of age, with a mild urinary disturbance which we commonly find in a man of that age, purely prostatic conditions of not any grave severity. It seems as though his main difficulty was vision. While he could see, he could see very, very poorly; except only by magnification could he read. He was also very hypertensive as a great many old gentlemen are. They have arteriosclerosis and with that kidney changes and blood vessel changes. This was his condition —arteriosclerosis, prostatic hypertrophy and renal insufficiency, kidney disturbance and failing eyesight." Dr. White testified that although he visited him "practically daily," Brachetti's condition, while in the hospital, required but little medical attention; that on May 30, he did not anticipate death; that the patient had started to retrogress a few days before the 30th but that his death from cerebral hemorrhage was rather unexpected; that from the day he entered the hospital until a day or two before his death his condition was normal, and that there was nothing about his condition from which one could have anticipated his sudden death.

The words "in contemplation of death," employed in subsection 3 of section 1 of the Inheritance Tax act, denote an apprehension of death arising from existing disease or infirmity of such a character as prompts one to make a disposition of his property. (*People* v. *Polhemus*, 367 Ill. 185; *People* v. *Danks*, 289 id. 542.) Whether a gift is made in contemplation of death is primarily a question of fact. (*People* v. *Northern Trust Co.* 324 Ill. 625.) In determining whether a transfer of property is made in contemplation of death, it is proper to take into consideration the donor's age, his physical condition, any action contemplated to be taken with respect to his health, the length of time he survives after making the transfer, and all dec-

larations of the parties at and before the transfer. *People v. Continental Illinois Bank and Trust Company,* 344 Ill. 123; *People v. Danks, supra.*

The gifts in question, all having been made within two years prior to Brachetti's death, fall within the statutory presumption, and are deemed *prima facie* to have been made in contemplation of death. This presumption prevails until rebutted by the donees. The issue presented is thus narrowed to a determination whether the evidence adduced by the donees rebutted the presumption of gifts made in contemplation of death. Here, the facts disclose that Brachetti was a wealthy man, eighty-three years of age, and afflicted with the diseases usually associated with age. His retention of cash in his safety-deposit box subsequent to the bank moratorium reflects his inherent cautionary instincts. Upon deciding to enter a hospital, he turned over to Henry Scarborough all his affairs, and, after two or three weeks in the hospital, to Ethel Scarborough for herself, her husband, mother and sister, and other friends, cash and bonds constituting more than half of his entire estate. His death occurred three or four months subsequent to the consummation of the gifts. Such an extensive disposal and distribution, largely to persons little more than strangers to him, and none of whom except Ethel Scarborough had ever before been a recipient of his benefaction to a substantial degree is inconsistent with any theory other than that Brachetti thought death was near. In short, the evidence of the donees falls short of overcoming the statutory presumption that the generous gifts from Brachetti to them were made in contemplation of death. The judge of the county court found that the presumption had not been overcome, and we see no reason for disturbing his conclusion.

The order of the county court is affirmed.

*Order affirmed.*